No. 24-3148

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

STATE OF ALASKA et al.,

*Plaintiffs-Appellants,*

v.

NATIONAL MARINE FISHERIES SERVICE,

*Defendant-Appellee,*

CENTER FOR BIOLOGICAL DIVERSITY,

*Intervenor-Defendant-Appellee.*

On Appeal from United States District Court for the District of Alaska

No. 3:22-cv-00249-JMK

The Honorable Joshua M. Kindred

## APPELLANT'S PETITION FOR PANEL REHEARING OR, IN THE ALTERNATIVE, FOR REHEARING *EN BANC*

TREG TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl
ron.opsahl@alaska.gov
Senior Assistant Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697

DORSEY & WHITNEY LLP
Norman D. James
james.norman@dorsey.com
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 735-2699
Facsimile: (480) 546-4951

*Attorneys for Appellant State of Alaska*

# TABLE OF CONTENTS

I.    SUMMARY OF GROUNDS FOR REHEARING ........................................1

II.   BACKGROUND ..........................................................................................4

     A.    The ESA's 90-Day Petition Review Process. ......................................4

     B.    Alaska's Petition to Delist the Ringed Seal. .......................................6

III.  ARGUMENT SUPPORTING REHEARING...................................................9

     A.    The Panel Decision Approved NMFS's Use of the Wrong Evidentiary Standard in Reviewing the Sufficiency of Alaska's Petition.............................................................................................9

     B.    The Panel Decision Erroneously Relied on Agency Deference, Allowing NMFS to Improperly Discount Credible Scientific Information Provided in Alaska's Petition........................................12

     C.    Given the Importance of 90-Day Findings to the ESA's Listing Process and the Absence of an Authoritative Decision from this Court, *En Banc* Review Is Appropriate..............................................16

IV.  CONCLUSION...........................................................................................17

4931-2133-3847\4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Oil & Gas Ass'n v. Jewell,*
815 F.3d 544 (9th Cir. 2016) ................................................................7

*Alaska Oil & Gas Ass'n v. Ross,*
722 F. App'x 666 (9th Cir. 2018) ......................................................13

*Alaska Oil and Gas Ass'n v. Pritzker,*
840 F.3d 671 (9th Cir. 2016) .......................................................*passim*

*Bennett v. Spear,*
520 U.S. 154 (1997)............................................................................14

*Buffalo Field Campaign v. Williams,*
579 F. Supp. 3d 186 (D.D.C. 2022)............................................*passim*

*Buffalo Field Campaign v. Zinke,*
289 F. Supp. 3d 103 (D.D.C. 2018)....................................12, 13, 16

*Colo. River Cutthroat Trout v. Kempthorne,*
448 F. Supp. 2d 170 (D.D.C. 2006)...................................................10

*Ctr. for Biological Diversity v. Bernhardt,*
982 F.3d 723 (9th Cir. 2020) ............................................................15

*Ctr. for Biological Diversity v. Kempthorne,*
2008 WL 659822 (D. Ariz. March 6, 2008)......................................10

*Ctr. for Biological Diversity v. Morgenweck,*
351 F. Supp. 2d 1137 (D. Colo. 2004)..............................................10

*Friends of Animals v. Haaland,*
997 F.3d 1010 (9th Cir. 2021) ..............................................5, 16–17

*Humane Soc. of the United States v. Pritzker,*
75 F. Supp. 3d 1 (D.D.C. 2014).............................................2, 10, 16

4931-2133-3847\4

**Statutes**

16 U.S.C. § 1533(b)(3)(A) ................................................................*passim*

16 U.S.C. § 1533(b)(3)(C)(ii) ...........................................................6

16 U.S.C. § 1533(b)(6)(A) ................................................................6

**Regulations**

50 C.F.R. § 402.01(b) ......................................................................1

50 C.F.R. § 424.14(h)(i)...................................................................5

50 C.F.R. § 424.14(h)(iii) ..........................................................6, 9, 12

12-Month Findings on Petitions to List 25 Species, 82 Fed. Reg.
    46,618 (October 5, 2017).......................................................3, 8, 9, 14

90-Day Finding on a Petition to List Gulf of Alaska Chinook Salmon,
    89 Fed. Reg. 45,815 (May 24, 2024)...........................................11, 13

90-Day Finding on a Petition to Delist the Artic Species of Ringed
    Seal, 85 Fed. Reg. 76,018 (Nov. 27, 2020) ................................*passim*

90-Day Finding on a Petition to List the Carribean Electric Ray, 79
    Fed. Reg. 4,877 (Jan. 30, 2014)..........................................................10

Revisions to the Regulations for Petitions,
    81 Fed. Reg. 66,462 (Sept. 27, 2016) ................................................6

Threatened Status for the Arctic, Okhotsk, and Baltic Subspecies of
    the Ringed Seal, 77 Fed. Reg. 76,706 (Dec. 28, 2012) ........................7

4931-2133-3847\4

## I.     SUMMARY OF GROUNDS FOR REHEARING

Appellant State of Alaska ("the State" or "Alaska") petitions the Court for panel rehearing or, in the alternative, rehearing *en banc* on the memorandum decision filed July 11, 2025, in the above-entitled matter ("Panel Decision").  The Panel Decision, without oral argument, rejected Alaska's appeal from the district court, thereby affirming the negative 90-day finding on Alaska's petition to delist the Arctic subspecies of ringed seal, a common marine species found throughout the Arctic Basin.  90-Day Finding on a Petition to Delist the Arctic Ringed Seal, 85 Fed. Reg. 76,018 (Nov. 27, 2020) ("90-Day Finding").[1]

Rehearing is sought because the Panel Decision conflicts with decisions of other federal courts interpreting the evidentiary standard applicable when the National Marine Fisheries Service ("NMFS") and its sister agency, the U.S. Fish and Wildlife Service ("FWS"), review the sufficiency of petitions to list, delist, or reclassify species under Section 4(b)(3)(A) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(b)(3)(A).[2]  That provision requires the Service to determine

---

[1] A copy of the Panel Decision is attached.  The 90-Day Finding is reproduced at 2-ER-22–31.

[2] NMFS administers the ESA with respect to marine and anadromous species, including the ringed seal, while FWS administers the ESA with respect to other species.  *See* 50 C.F.R. § 402.01(b) (2020). The regulations governing the listing process were jointly adopted by the agencies.  Where appropriate, the two agencies are collectively referred to as the "Services" or singly as the "Service."

- 1 -

whether the *petition* presents "substantial scientific or commercial information indicating that the petitioned action *may* be warranted." *Id.* (emphasis added). At this stage in the listing process, which is known as a 90-day finding, review is limited to the information in the petition, which need not be conclusive. *Humane Soc. of the United States v. Pritzker*, 75 F. Supp. 3d 1, 14 (D.D.C. 2014); *see also id.* at 10–11 (collecting cases addressing review at the 90-day finding stage). Further, the Services may not "discount scientific studies that support the petition or . . . resolve reasonable extant scientific disputes against the petition." *Buffalo Field Campaign v. Williams* ("*Buffalo Field II*"), 579 F. Supp. 3d 186, 197 (D.D.C. 2022) (citation omitted), *appeal dismissed sub nom. Buffalo Field Campaign v. Haaland*, 2022 WL 2135456 (D.C. Cir. June 14, 2022). If a positive 90-day finding is made, a more in-depth scientific analysis will take place to determine whether the petitioned action *is* warranted. The petition finding simply begins the process. *Id.* at 198–99 (discussing the ESA's process for listing determinations).

NMFS violated these requirements by refusing to accept credible scientific information supporting Alaska's petition. First, the agency refused to accept the new climate projections published by the Intergovernmental Panel on Climate Change ("IPCC"). NMFS regards the IPCC as the expert on climate modeling and relied on earlier projections by the IPCC to support listing decisions. *See Alaska Oil & Gas Ass'n v. Pritzker* ("*Pritzker*"), 840 F.3d 671, 679–80 (9th Cir. 2016). NMFS's

counsel admitted during oral argument before the district court that the IPCC's new report "is the best available science here" and described the report as "credible." 3-ER-348. But NMFS summarily dismissed updated climate projections from the IPCC's new report in the 90-Day Finding, quarreling with the IPCC's methodology and asserting that the report was not "new information." 85 Fed. Reg. at 76,022.

In contrast, FWS considered the IPCC's new climate modeling in connection with multiple listing determinations under the ESA and concluded that its long-term projections were not sufficiently reliable for making listing determinations. 12-Month Findings on Petitions to List 25 Species, 82 Fed. Reg. 46,618, 46,628 (Oct. 5, 2017) ("Multi-Species 12-Month Findings"). Alaska included FWS's credible analysis of the reliability of long-term projections in its Petition in support of delisting. NMFS improperly dismissed that evidence, erroneously claiming that FWS's finding was specific to the Pacific walrus, when FWS plainly stated that the projected changes caused by climate change are too uncertain beyond mid-century to conclude that *any* species is likely to be threatened with extinction. *Id.* at 46,628.

In short, NMFS erroneously applied a heightened evidentiary standard and second-guessed the information presented in Alaska's petition. This violated the evidentiary standard applicable to 90-day findings and was reversible error. At a minimum, there was a reasonable scientific disagreement that supports a positive 90-day finding and a more thorough review of the petitioned action. *See Buffalo Field*

- 3 -

*II*, 579 F. Supp. 3d at 197–99.

The Panel Decision, however, disregarded the evidentiary standard applicable at the 90-day review stage. In fact, the Panel Decision did not cite a single case that involved a 90-day petition finding and relied instead on a single decision, *Pritzker*, which concerned a challenge to a final listing determination—a much different proceeding with a different evidentiary standard. *See Buffalo Field II*, 579 F. Supp. 3d at 198–99 (finding it "implausible" that Congress would provide for an extended, multi-step listing process while requiring the Services "to resolve reasonable scientific disagreement regarding complex questions of central importance to the listing decision during the truncated 90-day petition process").

These serious errors highlight the need for *en banc* rehearing. The evidentiary standard for petition review under ESA Section 4(b)(3)(A) is important because the petition is the first step in the listing/delisting process under the ESA. This Court has never issued an opinion that squarely addresses the evidentiary standard for review of petitions. An *en banc* rehearing would permit the Court to clarify this standard and ensure uniformity within this circuit and with cases from other circuits, such as the *Buffalo Field* and *Humane Society* decisions from the D.C. Circuit.

## II.    BACKGROUND

### A.    The ESA's 90-Day Petition Review Process.

The ESA authorizes any interested person to petition the Services to add (i.e., list) or remove (i.e., delist) species from the lists of endangered and threatened

- 4 -

species. 16 U.S.C. § 1533(b)(3)(A). Once the Service receives a petition, it must decide, "to the maximum extent practicable," within 90 days whether it presents "*substantial scientific or commercial information indicating that the petitioned action may be warranted*." *Id.* (emphasis added). This "90-day finding" is based on the information provided in the petition and should not include a broader analysis of the grounds for the petitioned action. *See Friends of Animals v. Haaland*, 997 F.3d 1010, 1017 (9th Cir. 2021) (consideration of other factors during a 90-day finding "runs afoul of the ESA's plain directive that the Services' initial assessment be based on the contents of the petition").

The Services' regulations define "substantial scientific or commercial information" as "credible scientific or commercial information in support of the petition's claims such that a reasonable person conducting an impartial scientific review would conclude that the action proposed in the petition may be warranted." 50 C.F.R. § 424.14(h)(i) (2020).[3] Where there has been a previous review of the listing status of the species that resulted in a final agency action, "a petitioned action generally would not be considered to present substantial scientific and commercial information indicating that the action may be warranted unless the petition provides new information not previously considered." *Id.* § 424.14(h)(iii) (emphasis added).

---

[3] References to the Services' regulations refer to the version in effect in 2020, as the 90-Day Finding was issued in December 2020.

New information includes "a different analysis or interpretation of, or errors discovered in, the data, model, or analytic methodology used in a previous finding" to support the petition. Revisions to the Regulations for Petitions, 81 Fed. Reg. 66,462, 66,474 (Sept. 27, 2016).

If the Service concludes that the petition fails to present substantial information, the agency publishes a "negative" 90-day finding, which is subject to immediate judicial review. *See* 16 U.S.C. § 1533(b)(3)(A) & (C)(ii). If the petition is found to present substantial information, the Service publishes a "positive" 90-day finding and must "promptly commence a review of the status of the species concerned" to determine whether the petitioned action *is* warranted. *Id.* § 1533(b)(3)(A). This is known as a "12-month finding." Within one year of publishing an "is warranted" finding, NMFS must issue a final rule implementing its determination or withdraw the proposed regulation. *Id.* § 1533(b)(6)(A).

Thus, a final listing determination under ESA Section 4(b) is the product of a lengthy review with several steps and public notice and comment requirements. *See Buffalo Campaign II*, 579 F. Supp. 3d at 198-99 (describing the process for final listing determinations). A 90-day finding, by contrast, is merely the preliminary step and is limited to a "truncated" review based on the petition's information. *Id.* at 199.

## B. Alaska's Petition to Delist the Ringed Seal.

The ringed seal is a common Arctic marine mammal, with an extensive

circumpolar range and a population numbering in the millions. *See* Threatened Status for the Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal, 77 Fed. Reg. 76,706, 76,728 (Dec. 28, 2012). NMFS listed the species as a "threatened species" in 2012 based on the projected loss of sea-ice by 2100 due to long-term climate change, relying primarily on the IPCC's Fourth Assessment Report on Climate Change ("AR4"), issued in 2007. 77 Fed. Reg. at 76,707, 76,723.[4] NMFS regards the IPCC's climate assessment reports as the best scientific and commercial data available and relied on AR4's modeling and projections in listing another Arctic seal species, the bearded seal, in 2012. *See Pritzker*, 840 F.3d at 679-80 (approving use of the IPCC's climate projections); *see also Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 558–59 (9th Cir. 2016) (adopting the D.C. Circuit's holding that the IPCC's climate modeling is the "best available scientific data").

In 2013, the IPCC published its Fifth Climate Change Assessment Report ("AR5"), which provided new and more comprehensive modeling and projections. The IPCC explained, for example, that AR5's climate models "present[ed] an unprecedented level of information on which to base [climate change] projections" and that "there have been a number of advances" since AR4 was published in 2007.

---

[4] Under the ESA, a "threatened species" is a species that is not endangered but is likely to become an endangered species "within the foreseeable future." 16 U.S.C. § 1532(20). The "foreseeable future extends only so far into the future as the Services can reasonably determine that both the future threats and the species' responses to those threats are likely." 50 C.F.R. § 424.11(d).

3-ER-281, 284.  At oral argument in the district court, NMFS's counsel admitted that AR5 "is the best available science."  3-ER-348.

The new information presented in AR5 indicates that the projected magnitude of future climate change varies widely after mid-century due to several factors, including natural climate variability, uncertainty about the rate of future greenhouse gas emissions, and uncertainty of how the climate may respond to future emissions. *See*, *e.g.*, 3-ER-268–69 ("FAQ 1.1 – If Understanding of the Climate System Has Increased, Why Hasn't the Range of Temperature Projections Been Reduced?").  Based on the new information in AR5, FWS determined that long-term forecasts of climate change are not sufficiently reliable beyond mid-century and should not be used for making listing determinations under the ESA.  82 Fed. Reg. at 46,628.

Based on this information, Alaska and three other Alaska entities submitted a petition to delist the ringed seal in March 2019 ("Petition").[5]  Twenty months later, in November 2020, NMFS issued a negative 90-Day Finding rejecting Alaska's Petition.  85 Fed. Reg. at 76,018.  NMFS disagreed with the IPCC's new climate projections, summarily rejecting one of AR5's scenarios as implausible even though the IPCC explained that the use of multiple models in AR5 is necessary to account for the full range of uncertainty in the modeling.  85 Fed. Reg. at 76,021–22;

―――――――――――――

[5]  The Petition is reproduced at 2-ER-32–62.  The petitioners joining the State were Arctic Slope Regional Corporation, Iñupiat Community of the Arctic Slope, and North Slope Borough.

*compare* AR5, 3-ER-286–87 ("FAQ 12.1 – Why Are So Many Models and Scenarios Used to Project Climate Change?").

NMFS also rejected FWS's analysis of the foreseeable future in that agency's Multi-Species 12-Month Findings on the ground that the foreseeability of threats to the species is "case-specific" and applied only to the Pacific walrus. 85 Fed. Reg. at 76,022. NMFS disregarded FWS's conclusion that current climate modeling was not sufficiently reliable beyond mid-century *for any species*. 82 Fed. Reg. at 46,628 (FWS's discussion of the uncertainties associated with long-term climate forecasts).

In short, NMFS improperly dismissed credible scientific information supporting Alaska's Petition, rather than crediting this new information and considering whether a reasonable person could conclude, based on that information, that delisting *may* be warranted. *See* 50 C.F.R. § 424.14(h)(iii). NMFS thereby foreclosed a more in-depth review of the new scientific information to determine if delisting *is* warranted.

## III. ARGUMENT SUPPORTING REHEARING

### A. The Panel Decision Erroneously Approved NMFS's Use of the Wrong Evidentiary Standard in Reviewing the Sufficiency of Alaska's Petition.

In this appeal, the agency action under review was NMFS's negative 90-day Finding on the sufficiency of Alaska's petition, not an "is warranted" determination at the 12-month stage or a final listing determination, as in *Pritzker*—the Panel

- 9 -

Decision's principal authority. The ESA provides, and numerous court decisions have held, that "the only question before NMFS when it conducts a 90-day review is whether the petitioned action *may be warranted*, not whether it *is warranted*." *Humane Soc.*, 75 F. Supp. 3d at 10 (quoting *Ctr. For Biological Diversity v. Kempthorne*, 2008 WL 659822, at *9 (D. Ariz. March 6, 2008)) (emphasis original; cleaned up). "[T]he evidentiary standard does not ask whether listing is warranted, but only whether substantial or credible scientific evidence supports that possibility." *Buffalo Field II*, 579 F. Supp. 3d at 198. "Conclusive evidence" is not required. *Humane Soc.*, 75 F. Supp. 3d at 14; *see also Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 176 (D.D.C. 2006) (holding review of petition at 90-day stage is subject to "less searching review"); *Ctr. for Biological Diversity v. Morgenweck*, 351 F. Supp. 2d 1137, 1140 (D. Colo. 2004) (setting aside negative 90-day finding because the agency imposed improper evidentiary burden).

NMFS has "acknowledged that past judicial decisions have established that 'a petition need not establish a strong likelihood or a high probability . . . to support a positive 90-day finding.'" *Humane Soc.*, 75 F. Supp. 3d at 10 (quoting 90-Day Finding on a Petition to List the Caribbean Electric Ray, 79 Fed. Reg. 4,877, 4,878 (Jan. 30, 2014) (cleaned up)). Last year, NMFS issued a positive 90-day finding on a petition to list Chinook salmon populations in Alaska, applying a decidedly relaxed standard. *See* 90-Day Finding on a Petition to List Gulf of Alaska Chinook Salmon,

89 Fed. Reg. 45,815 (May 24, 2024).  NMFS "identified numerous factual errors, omissions, incomplete references, and unsupported assertions and conclusions" within the Chinook salmon petition but issued a positive 90-day finding anyway.  *Id.* at 45,817–18.  NMFS explained that it "will accept the petitioners' sources and characterizations of the information presented if they appear to be based on accepted scientific principles . . . ."  *Id.* at 45,816.  The relaxed evidentiary standard NMFS employed in these 90-day findings differed dramatically from the standard applied in its review of Alaska's Petition.

The Panel Decision, however, erroneously treated NMFS's 90-Day Finding as if it were a determination on whether delisting is warranted rather than whether *Alaska's petition* presented sufficient information to warrant a more in-depth review of the status of the species, leading to a 12-month determination.  *Compare* 16 U.S.C. § 1533(b)(3)(A) (90-day finding is limited to whether "the petition presents substantial scientific or commercial information").  The Panel Decision's primary authority, *Pritzker*, upheld a final rule *listing* a species as threatened under the ESA, and did not address the evidentiary standard for reviewing a petition under § 1533(b)(3)(A).  In fact, the Panel Decision does not cite a single reported decision involving judicial review of a 90-day finding.  Thus, the Panel Decision applied the wrong evidentiary standard, requiring rehearing.

- 11 -

**B.** **The Panel Decision Erroneously Relied on Agency Deference, Allowing NMFS to Improperly Discount Credible Scientific Information Provided in Alaska's Petition.**

In affirming the 90-Day Finding, the Panel Decision, at pages 3–4, erroneously relied on deference to NMFS's technical expertise, citing *Pritzker* for the general rule that courts "must defer to the agency's interpretation of complex scientific data." 840 F.3d at 687 (citation omitted). This discussion misapprehended the nature of petition review at the 90-day stage, again highlighting the need for *en banc* guidance from the Court.

At the 90-day review stage, the issue is "whether the petition presents substantial scientific or commercial information indicating that the petitioned action *may* be warranted." 16 U.S.C. § 1533(b)(3)(A) (emphasis added). This is an objective, "reasonable person" test: NMFS must evaluate the petition "to determine whether a reasonable person conducting an impartial scientific review would conclude that the action proposed in the petition may be warranted." 50 C.F.R. § 424.14(h)(iii). Under this standard, deference to the agency's scientific expertise plays a very limited role—if the information is credible, it should be accepted even if NMFS may disagree with it. NMFS "cannot resolve outstanding disputes between reasonable scientists over relevant matters in the course of a 90-day review." *Buffalo Field Campaign v. Zinke* ("*Buffalo Field I*"), 289 F. Supp. 3d 103, 111 (D.D.C. 2018); *see also Buffalo Field II*, 579 F. Supp. 3d at 196–98. NMFS emphasized this

- 12 -

point in its 90-day finding on the Chinook salmon petition:

> Information that is susceptible to more than one interpretation or that is contradicted by other available information will not be dismissed at the 90-day finding stage, so long as it is reliable and a reasonable person conducting an impartial scientific review would conclude it supports the petitioners' assertions.

89 Fed. Reg. at 45,816. NMFS can reject a scientific study only if it is known to be "obsolete, wholly unreliable, or irrelevant." *Buffalo Field I*, 289 F. Supp. 3d at 111.

Here, by contrast, NMFS dismissed credible scientific information from two expert entities: the IPCC and FWS. First, NMFS dismissed the new climate change projections published by the IPCC in AR5. As explained, NMFS considers the IPCC's climate change projections to be the best available science and has relied on the IPCC's climate change projections as the best available science in prior listing decisions. *See Pritzker*, 840 F. 3d at 676–7. And NMFS relied on the IPCC's climate change projections as the best available science in listing the ringed seal, which this Court also approved. *Alaska Oil & Gas Ass'n v. Ross*, 722 F. App'x 666, 668-69 (9th Cir. 2018) (following *Pritzker*).

Consequently, there is no dispute that the IPCC's climate modeling is the best available science. Therefore, at the 90-day review stage, the IPCC's new projections in AR5 should have been accepted by NMFS. Indeed, NMFS's counsel told the district court during oral argument that NMFS "does conclude that AR5 is the best available science here," and added, "There's no disputing that [AR5 is] a credible

- 13 -

report." 3-ER-348. Yet, NMFS quarreled with AR5's long-term projections, one of which produced results that NMFS deemed unrealistic. *See* 85 Fed. Reg. at 76,022. At the 90-day stage, agency deference does not allow NMFS to pick and choose data from a credible scientific source to support its desired conclusion. The Panel Decision's contrary holding highlights its confusion about the proper evidentiary standard at the 90-day review stage.

The Panel Decision similarly erred in upholding NMFS's rejection of FWS's finding that recent long-term climate projections are too uncertain after mid-century to be reliable. Here, the Panel Decision made two mistakes. First, it erroneously assumed that FWS's finding was specific to the Pacific walrus species, when it was a general finding that applied to multiple species. FWS's discussion identified four factors in support of its conclusion that an extended climate change forecast was not reliable, three of which directly concern the wide range of possible outcomes reflected in AR5's climate modeling. 82 Fed. Reg. at 46,628. None of those factors is species-specific. In fact, this discussion appears in the portion of FWS's Multi-Species 12-Month Findings that addresses a different species.[6] Therefore, the Panel

---

[6] As to the Pacific walrus, FWS concluded that "beyond 2060 the conclusions concerning the impacts of the effects of climate change on the Pacific walrus population are based on speculation, rather than reliable prediction." *Id.* at 46,643; *see Bennett v. Spear*, 520 U.S. 154, 176 (1997) ("The obvious purpose of the requirement that each agency 'use the best scientific and commercial data available' is to ensure that the ESA not be implemented haphazardly, on the basis of speculation or surmise.").

- 14 -

Decision's discussion, at page 4, about "USFWS's 12-month findings *about the Pacific walrus*," like NMFS's finding, improperly disregarded FWS's key findings.

Second, the Panel Decision erred in relying on *Pritzker*, which did not address the standard for the review of a petition under 16 U.S.C. § 1533(b)(3)(A). The Panel Decision states: "An agency acts neither arbitrarily nor capriciously when it 'adopt[s] a foreseeability analysis that is responsive to new, reliable research while accounting for species-, threat-, and habitat specific factors.'" Panel Decision at 4 (quoting *Pritzker*, 840 F.3d at 682). But NMFS did not "adopt a foreseeability analysis," nor would such analysis be appropriate at the 90-day review stage. Instead, the agency *rejected* a credible scientific analysis concerning the use of the IPCC's climate modeling to make long-term projections. Rather than being "responsive to new, reliable research," NMFS improperly dismissed new, reliable scientific information from a credible source during the 90-day petition process.

In addition to the foregoing errors, any deference to NMFS "applies only when the agency is making predictions 'within its area of special expertise.'" *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 740 (9th Cir. 2020) (citation omitted) (refusing to give agency deference when action was outside agency's area of expertise). NMFS has no special expertise in long-term climate modeling. The IPCC is considered the expert on climate modeling, as stated in *Pritzker*. If NMFS is allowed to reject new information from the IPCC's updated climate modeling, the

- 15 -

ESA's "best available science" standard has no meaning, giving NMFS license to implement the ESA arbitrarily to achieve its desired outcome.

### C. Given the Importance of 90-Day Findings to the ESA's Listing Process and the Absence of an Authoritative Decision from This Court, *En Banc* Review Is Appropriate.

Alaska suggests that *en banc* review is appropriate in this case. As explained above, the Panel Decision conflicts with other court decisions addressing the evidentiary standard for 90-day findings, including the *Buffalo Field I*, *Buffalo Field II*, and *Humane Society* decisions from district courts in the D.C. Circuit. Moreover, the Ninth Circuit has never issued an authoritative decision addressing the evidentiary standard for reviewing petition findings under ESA Section 4(b)(3)(A).

The only Ninth Circuit opinion that addresses the requirements for 90-day findings is *Friends of Animals*. The holding and analysis of that case are limited, however. It involved a challenge to a rule adopted by the Services that imposed certain requirements for petitions, including advance notice to state wildlife agencies. 997 F.3d at 1014. The Court invalidated the Services' rule, holding that these requirements conflicted with the ESA because they would allow additional, outside information to be considered during the 90-day review process. *Id.* at 1016–17. *Friends of Animals* did not specifically address the evidentiary standard that applies at the 90-day review stage.

Many listing actions are commenced by petitions to the Services, and the

evidentiary standard that applies during the 90-day petition process is an important issue. The Panel Decision, unfortunately, failed to even acknowledge this issue, improperly treating this case as if it were a final listing determination that is entitled a high level of deference. *Compare Buffalo Field II*, 579 F. Supp. 2d at 197 (under the 90-day standard, NMFS is not permitted to "discount scientific studies that support the petition or to resolve reasonable extant scientific disputes against the petition"). Consequently, this case provides a vehicle for an *en banc* panel to issue an authoritative decision on the standard applicable to 90-day findings while correcting the Panel Decision's errors.

## IV. CONCLUSION

At the 90-day finding stage, review of Alaska's Petition was limited to whether a reasonable person would conclude the Petition presents substantial scientific information indicating that the petitioned action *may* be warranted. 16 U.S.C. § 1533(b)(3)(A). This is a low threshold; conclusive evidence was not required. Information from reliable sources must be credited, even if uncertainty or disagreement exists.

In affirming the district court, the Panel Decision applied the wrong evidentiary standard, treating the case as if it involved review of a final listing determination rather than the sufficiency of Alaska's petition. The Panel Decision never acknowledged the relaxed standard applicable to petition review at the 90-day

- 17 -

stage and erroneously allowed NMFS to dismiss scientific evidence from credible sources, including the IPCC—the acknowledged expert on climate change modeling—as well as its sister agency, FWS.

Rehearing therefore is needed to ensure that NMFS follows the correct evidentiary standard for a 90-day finding and properly credits the scientific information provided in the Petition, as well as providing guidance to the Services in connection with future 90-day petition reviews.

Respectfully submitted this 22nd day of August, 2025.

DORSEY & WHITNEY LLP

*/s/ Norman D. James*
DORSEY & WHITNEY LLP
Norman D. James
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

Attorneys for Appellant State of Alaska

- 18 -

## CERTIFICATE OF COMPLIANCE

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number** <u>24-3148</u>

I am the attorney or self-represented party

**I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing is** (*select one*):

[ X] Prepared in a format, typeface and type style that complies with Fed R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 4,188

**OR**

[ ] In compliance with Fed R. App. 32 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** */s/ Norman D. James*     **Date** August 22, 2025

- 19 -

4931-2133-3847\4

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing APPELLANT'S PETITION FOR PANEL REHEARING OR, IN THE ALTERNATIVE, FOR REHEARING *EN BANC* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 22, 2025.

I certify that all participants in the case are registered users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 22, 2025

/s/ Norman D. James
DORSEY & WHITNEY LLP
Norman D. James
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

Attorneys for Appellant State of Alaska

4931-2133-3847\4

**Memorandum Decision**

**Docket Entry 44.1**

**Filed July 11, 2025**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 11 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STATE OF ALASKA,<br><br>          Plaintiff - Appellant,<br><br>and<br><br>NORTH SLOPE BOROUGH,<br><br>          Plaintiff,<br><br>  v.<br><br>NATIONAL MARINE FISHERIES<br>SERVICE,<br><br>          Defendant - Appellee,<br><br>CENTER FOR BIOLOGICAL<br>DIVERSITY,<br><br>          Intervenor-Defendant -<br>Appellee. | No. 24-3148<br><br>D.C. No.<br>3:22-cv-00249-SLG<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

--------------------

     *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted July 9, 2025[**]
San Francisco, California

Before: H.A. THOMAS and DE ALBA, Circuit Judges, and RAKOFF, District
Judge.[***]

The State of Alaska appeals the district court's grant of summary judgment

to the National Marine Fisheries Service (NMFS) in Alaska's action challenging

NMFS's negative 90-day finding on Alaska's petition to delist the Arctic ringed

seal as a threatened species under the Endangered Species Act (ESA). We have

jurisdiction under 28 U.S.C. § 1291. We affirm.

"We review de novo the district court's grant of summary judgment to

determine whether NMFS's ESA listing decision was 'arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law.'" *Alaska Oil & Gas*

*Ass'n v. Pritzker*, 840 F.3d 671, 675 (9th Cir. 2016) (quoting 5 U.S.C.

§ 706(2)(A)). Our review under the Administrative Procedure Act (APA) is

"highly deferential, presuming the agency action to be valid and affirming the

agency action if a reasonable basis exists for its decision." *Ctr. for Biological*

*Diversity v. Bureau of Land Mgmt.*, 833 F.3d 1136, 1146 (9th Cir. 2016). "Agency

action should be affirmed 'so long as the agency considered the relevant factors

_____

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

and articulated a rational connection between the facts found and the choices made.'" *Audubon Soc'y of Portland v. Haaland*, 40 F.4th 967, 979 (9th Cir. 2022) (quoting *Pritzker*, 840 F.3d at 675). Where, as here, NMFS has made a prior listing determination, a subsequent petition generally does not "present substantial scientific and commercial information . . . unless the petition provides new information not previously considered." 50 C.F.R. § 424.14(h)(1)(iii) (2016).

1. NMFS reasonably determined that new climate change projections were consistent with those it had considered at the time of its 2012 listing decision. *See* Endangered and Threatened Wildlife; 90-Day Finding on a Petition to Delist the Arctic Subspecies of Ringed Seal Under the Endangered Species Act, 85 Fed. Reg. 76018, 76022 (Nov. 27, 2020). We have explained that "[t]he fact that climate projections for 2050 through 2100 may be volatile does not deprive those projections of value in the rulemaking process." *Pritzker*, 840 F.3d at 680. Here, NMFS "provided a reasonable and scientifically supported methodology for addressing volatility in its long-term climate projections, and it represented fairly the shortcomings of those projections—that is all the ESA requires." *Id.* Nor did NMFS act arbitrarily and capriciously in determining that the lowest emissions scenario—which is based on new technologies that have not been widely implemented—was unrealistic because current trends in annual global emissions are consistent with high-end emissions scenarios. *See* 85 Fed. Reg. at 76022; *see*

*also Pritzker*, 840 F.3d at 679 ("[W]e 'must defer to the agency's interpretation of complex scientific data' so long as the agency provides a reasonable explanation for adopting its approach and discloses the limitations of that approach." (quoting *Nw. Ecosys. All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1150 (9th Cir. 2007))).

2. NMFS reasonably declined to rely on the U.S. Fish and Wildlife Service's (USFWS) 12-month findings about the Pacific walrus because they were not specific to the Arctic ringed seal. *See* 85 Fed. Reg. at 76022. An agency acts neither arbitrarily nor capriciously when it "adopt[s] a foreseeability analysis that is responsive to new, reliable research while accounting for species-, threat-, and habitat-specific factors." *Pritzker*, 840 F.3d at 682. Here, NMFS reasonably explained that USFWS's 12-month findings about the Pacific walrus had no bearing on NMFS's decision about whether delisting the Arctic ringed seal may be warranted. *See* 85 Fed. Reg. at 76022.

3. NMFS did not improperly disregard new information contained in the petition about the Arctic ringed seal's response to sea ice loss and other climate-related changes. First, in its 90-day finding, NMFS discussed at length why the petition's cited studies did not constitute new information. *See id.* at 76021–27. Second, NMFS reasonably explained that its "listing of Arctic ringed seals as threatened was not based on evidence indicating that population size or health had

4

declined, nor was it based on a presumption that a climate driven decline would be detectable at that time or shortly thereafter." *Id.* at 76024. Instead, its decision "was based primarily on the conclusion that continuing Arctic warming would cause substantial reductions in sea ice and on-ice snow depths," which is expected to result in decreased pup survival and population declines within the foreseeable future. *Id.* An agency need not wait until "it ha[s] quantitative data reflecting a species' decline, its population tipping point, and the exact year in which that tipping point would occur before it could adopt conservation policies to prevent that species' decline." *Pritzker*, 840 F.3d at 683; *see also id.* (noting that NMFS "need not wait until a species' habitat is destroyed to determine that habitat loss may facilitate extinction").

In sum, NMFS reasonably determined that the petition did not present new information indicating that delisting the Arctic ringed seal may be warranted. Because NMFS considered all relevant factors and "articulated a rational connection between the facts found and the choices made[,]" *id.* at 675, we must "defer to the agency's interpretation of complex scientific data" in this case, *id.* at 679.

**AFFIRMED.**